UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MICHAEL CHALK | : |
| | : |
| v. | : C.A. No. 09-031S |
| | : |
| STATE OF RHODE ISLAND | : |

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

Before the Court is Michael Chalk's (the "Petitioner") Petition for Writ of Habeas Corpus (the "Petition") filed pursuant to 28 U.S.C. § 2254. (Document No. 1). On February 9, 2009, the Respondent, State of Rhode Island, filed a Motion to Dismiss (Document No. 4), to which the Petitioner filed an objection. (Document No. 6). I denied the Motion to Dismiss without prejudice because the Motion did not address both grounds for relief contained in the Petition. Subsequently, on May 12, 2009, the State filed a Renewed Motion to Dismiss. (Document No. 8). Petitioner filed his objection (Document No. 9) and a hearing was held on June 30, 2009.

The Petition has been referred to me for preliminary review, findings and recommended disposition. See 28 U.S.C. § 636(b)(1)(B); LR Cv 72(a). After reviewing the Petition, and the legal briefs and exhibits filed by both parties, and listening to the arguments of counsel, I recommend that the State's Motion to Dismiss (Document No. 8) be GRANTED and that the Petition be DENIED and DISMISSED for the reasons set forth below.

### Facts and Travel

Following a jury trial, Petitioner was convicted of four counts of sexual assault toward three minors. In particular, he was convicted of one count of first degree sexual assault, one count of first degree child molestation and two counts of second degree sexual assault. The facts underlying

Petitioner's convictions are set forth in State v. Chalk, 816 A.2d 413 (R.I. 2002), in which the Rhode Island Supreme Court ("RISC") affirmed Petitioner's convictions. Following the RISC's decision, Petitioner filed a Motion for Post Conviction Relief in the Rhode Island Superior Court. The Superior Court denied his Motion, and the denial was affirmed by the RISC on June 20, 2008. Chalk v. State, 949 A.2d 395 (R.I. 2008).

Petitioner now seeks habeas corpus review of his convictions by this Court, basing his Petition on two grounds: (1) ineffective assistance of counsel; and (2) denial of his Sixth Amendment right to a public trial. (Document No. 1).

**Discussion**

**I.     Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, restricts the power of federal courts to grant habeas relief to prisoners. In analyzing Petitioner's claims, the Court is guided by 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;...

In determining what constitutes an "unreasonable application" of federal law, this Court looks to McCambridge v. Hall, 303 F.3d 24 (1st Cir. 2002). McCambridge states that "'some increment of incorrectness beyond error is required'...[in an amount] great enough to make the [state court's] decision unreasonable in the independent and objective judgment of the federal court..." Id.

at 36 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2nd Cir. 2000)). For example, a federal court may find a decision of a state court to be "unreasonable" if that decision is "devoid of record support for its conclusions or is arbitrary." Id. at 37 (citing O'Brien v. Dubois, 145 F.3d 16, 25 (1st Cir. 1998)). In Williams v. Taylor, 529 U.S. 362, 411 (2000), the Supreme Court noted that an "incorrect" application of federal law is not necessarily tantamount to an "unreasonable" one: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." See also Ellen v. Brady, 475 F.3d 5, 8 (1st Cir. 2007) ("In making this evaluation..., we do not focus on the quality of the [state] court's reasoning but rather on the reasonableness of the outcome.").

Another category of state court errors that may be remedied on federal habeas review involves unreasonable determinations of fact. See 28 U.S.C. § 2254(d)(2). Under this standard, the state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary. Mastracchio v. Vose, 274 F.3d 590, 597-598 (1st Cir. 2001) (describing burden on habeas petitioner as a "high hurdle"). "To state a federal habeas claim concerning a state criminal conviction, the petitioner must allege errors that violate the Constitution, laws, or treaties of the United States." Evans v. Verdini, 466 F.3d 141, (1st Cir. 2006) (citations omitted). "[F]ederal habeas corpus relief does not lie for errors of state law...." Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

II. **Petitioner's Grounds for Relief**

A. **Ineffective Assistance of Counsel**

Petitioner's first ground for relief is that his trial counsel was constitutionally deficient for failing to raise on appeal the issue of the closure of the courtroom during trial testimony from one of the three victims – a fourteen year old.[1] Prior to his scheduled testimony, the fourteen year old victim's attorney filed a motion pursuant to R.I. Gen. Laws § 11-37-13.2 requesting that the victim be permitted to testify either by closed circuit television or in a closed courtroom. Chalk, 949 A.2d at 397. A social worker who purportedly treated the victim submitted a letter to the trial justice indicating that it would be in the victim's "developmental interest to testify under protected circumstances" and that "open court testimony would retramatize [him] and cause him emotional suffering." (Document No. 8-2). Petitioner's trial counsel submitted a written objection to the Motion and the Motion was argued before the trial justice. (Document No. 8-3). Ultimately, the trial justice determined that "forcing the victim to testify in an open courtroom would have a direct impact on him." Chalk, 949 A.2d at 397. Thereafter, the trial justice "limited spectators during the victim's testimony to members of the media and to [Petitioner's] directly related family members, including his father, mother, sister and brother." Id. In his Memorandum in Support of his Objection, Petitioner's trial counsel argued that allowing the victim to testify by closed circuit television or in a closed courtroom would violate both his Sixth Amendment rights of confrontation and to a public trial. (Document No. 8-3). Because the trial justice did not exclude Petitioner or his attorney during the victim's testimony, he correctly concluded that "the confrontation clause [was]

---

[1] This testifying victim was thirteen years old when he was allegedly molested by Petitioner in 1999 at Scout camp. Petitioner was in his late thirties at the time of the alleged molestation, and he was convicted of first degree child molestation as to this victim. R.I. Gen. Laws § 11-37-8.1.

not a factor." (Document No. 8-4). As to the public trial issue, the trial justice balanced the competing interests involved and "crafted a compromise allowing the press and [Petitioner's] immediate family members to remain in the courtroom." Chalk, 949 A.2d at 399.

Petitioner's trial counsel did not raise the public trial issue on direct appeal to the RISC, but his present counsel attempted to raise it both substantively and as an ineffective assistance of counsel claim in his post conviction relief motion. The RISC affirmed the denial of the post-conviction relief motion. In its affirmance, the RISC stated:

> In light of this Court's jurisprudence at the time of the appeal from the judgment of conviction, it was reasonable for applicant's counsel to conclude that the trial justice's decision to close the courtroom was not a strong issue for appeal. Despite the lack of an evidentiary hearing, the trial justice attempted to balance the interests involved, and he crafted a compromise allowing the press and applicant's immediate family members to remain in the courtroom. Although later cases make it clear that an evidentiary hearing and clearly stated findings are required, we must consider the relative strength of the issues for appeal at the time that applicant's trial counsel made his decision.

Chalk v. State, 949 A.2d at 399-400 (citations omitted).

Petitioner argues that his trial counsel should have recognized that the trial justice failed to "comply with the courtroom closure test set out by this Court" in Santos v. Brown, 596 F. Supp. 214, 217-219 (D.R.I. 1984). (Document No. 6 at 8). Specifically, Petitioner argues that the trial justice's failure to hold an evidentiary hearing prior to the partial courtroom closure was a violation of his Sixth Amendment right to a public trial. Petitioner claims that the failure to raise this issue on "direct appeal was 'objectively unreasonable' because the courtroom closure issue was '<u>clearly stronger</u> than the issues that counsel did present' on appeal." Id. (quoting Smith v. Robbins, 528 U.S. 259, 287-88 (2000)). In order to determine if trial counsel for Petitioner was constitutionally

deficient, I must consider both the applicable standard of review for ineffective counsel claims, as well as the state of the law at the time the appeal was filed concerning the Sixth Amendment right to a public trial.

Strickland v. Washington, 466 U.S. 668 (1984), sets forth the applicable standard for reviewing claims of ineffective assistance of counsel. Strickland requires not only that counsel's performance be deficient, but that counsel's deficient performance prejudice Petitioner. See id. at 687. Moreover, in Strickland, the Court stated that "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Applying Stickland to counsel's performance, "[j]udicial scrutiny of counsel's performance must be highly deferential....A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. See also Wiggins v. Smith, 539 U.S. 510, 523 (2003) (quoting Strickland, 466 U.S. at 689) ("[E]very effort [must] be made to eliminate the distorting effects of hindsight").

Turning first to the "deficient performance" prong of the Strickland test, the Supreme Court has held that "appellate counsel...need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith, 528 U.S. at 288. In Smith, the Court noted that "only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Id. (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)). Thus, in order to determine if the omitted issue was "clearly stronger" than those raised, the Court must look to whether, as Petitioner argues, trial counsel's failure to "fully analyze and utilize the Santos v. Brown decision constitutes an objectively

unreasonable failure to discover and argue the issue on appeal..." Document No. 9 at 4. After consideration of the controlling state court cases at the time the appeal was filed, as well as this Court's post-<u>Santos v. Brown</u> decision in <u>Fayerweather v. Moran</u>, 749 F. Supp. 43 (D.R.I. 1990), I conclude that the failure to raise the issue on appeal was not objectively unreasonable.

Petitioner relies heavily on <u>Santos v. Brown</u> in support of his position. Although <u>Santos</u> granted habeas relief to a petitioner that claimed the closure of the courtroom during a victim's testimony resulted in a denial of his Sixth Amendment public trial right, <u>Santos</u> interpreted and applied Supreme Court rulings to the specific facts of that case. This Court subsequently noted in the <u>Fayerweather v. Moran</u> case – decided six years after <u>Santos v. Brown</u> – that <u>Santos</u> did not articulate an absolute rule applicable to every alleged deprivation of a right to a public trial. <u>Fayerweather</u> involved a habeas claim filed by a petitioner convicted of second degree sexual assault on a six year old girl. In that case, during the girl's testimony, the courtroom was closed except for the presence of "members of [defendant's] family, media representatives and any other individuals [defendant] designated to be present" when the victim testified. <u>Fayerweather</u>, 749 F.Supp. at 44. The trial justice did not hold an evidentiary hearing prior to the closure, but instead questioned the child, and considered the arguments of counsel. <u>Id.</u> The trial justice concluded that "at least to the extent of the restrictions imposed, Fayerweather's right to a public trial was overridden by a compelling need to protect the child's welfare." <u>Id.</u> On habeas review, this Court noted that the "Sixth Amendment does not guarantee a defendant an audience. It merely guarantees that members of the public will have a right to attend a defendant's trial unless there are compelling reasons for excluding them." <u>Id.</u> at 45. The Court went on to state that "protection of a minor's well-being is an adequate reason for restricting attendance at a criminal trial." <u>Id.</u> at 46.

Importantly, the Court in <u>Fayerweather</u> also rejected the petitioner's heavy reliance on <u>Santos</u>, noting that in <u>Santos</u>, the victim was an adult, that the "trial judge did not...make any [ ] effort to determine the effect that testifying was likely to have [upon the witness]" and that "*[a]ll* spectators were excluded from the courtroom..." during the victim's testimony. <u>Id.</u> at 46 (emphasis in original). <u>Fayerweather</u> distinguishes <u>Santos</u>, and in so doing, provides relevant guidance in this case. The victim in the present case was a minor, as was the victim in <u>Fayerweather</u>. Similarly, although there was no evidentiary hearing, the trial justice made a reasonable effort to determine the effect of testifying on the victim in this case and to balance that with Petitioner's rights to confrontation and a public trial. Moreover, like <u>Fayerweather</u>, the present case did not involve a complete closure of the courtroom. The <u>Fayerweather</u> decision makes clear that the ruling in <u>Santos</u> did not create a brightline rule that an evidentiary hearing was required by the Sixth Amendment in every case involving a full or partial courtroom closure, as Petitioner contends. Moreover, as the RISC noted, applicable state court decisions at that time did not require an evidentiary hearing as a prelude to every judicial determination to close or partially close a courtroom. <u>Chalk v. State</u>, 949 A.2d at 399-400 and n.1.

Therefore, I reject Petitioner's contention that the public trial right issue was "clearly stronger" than the other appellate issues pursued by trial counsel. As noted above, this issue must be evaluated without considering the "distorting effects of hindsight." <u>Strickland</u>, 466 U.S. at 689. Doing so, trial counsel's decision not to pursue the public trial issue on direct appeal was not objectively unreasonable. This is not a case where trial counsel did not identify or understand the constitutional issue in question. In fact, trial counsel filed a thoroughly researched legal memorandum in opposition to the victim's motion which squarely raised the Sixth Amendment

public trial issue. See Document No. 8-3. In his legal memorandum, trial counsel cited Santos v. Brown and included a lengthy quote from the decision regarding the constitutional right to a public trial. Id. However, trial counsel is not constitutionally compelled to pursue every potential challenge to a conviction on direct appeal and may use his or her professional judgment to select from among potential challenges to maximize the likelihood of success on appeal. Smith, 528 U.S. at 288 ("only when ignored issues are clearly stronger than those presented [on appeal], will the presumption of effective assistance of counsel be overcome"). As discussed above, the facts in this case are much closer to Fayerweather v. Moran than Santos v. Brown, and an objective reading of those cases as well as existing state law at the time reasonably leads to a conclusion that the public trial issue was not a strong appeal argument. Trial counsel was plainly aware of the public trial issue and exercised his judgment not to pursue it. Rather, he focused his appeal on four other legitimate, although ultimately unsuccessful, arguments including a due process challenge to the late production of impeachment materials as to one of the testifying victims and the admission of prior bad acts evidence, i.e., an uncharged prior act of sexual assault as to one of the victims. See State v. Chalk, 816 A.2d 413.

Petitioner has not shown that his trial counsel's performance on appeal was deficient under the Strickland standard. Because Plaintiff has not shown that his trial counsel's performance was constitutionally deficient, I need not address the prejudice prong of the Strickland test. Accordingly, Petitioner has not established that the RISC's application of Strickland to his ineffective assistance claim was an unreasonable application of federal law and thus he is not entitled to habeas corpus relief under 28 U.S.C. § 2254.

## B. Right to a Public Trial

Second, Petitioner asserts a substantive Sixth Amendment claim that the partial closure of the courtroom denied him his constitutional right to a public trial. Petitioner's trial counsel did not raise this issue on direct appeal. Because the issue was not raised on direct appeal, Petitioner did not exhaust this ground at the state court level.[2]

This unexhausted claim renders the Petition "mixed." The Supreme Court previously held that a "mixed" habeas petition is not reviewable by federal district courts because doing so would deprive states of the first opportunity to decide a claim. Rose v. Lundy, 455 U.S. 509, 514 (1982). More recently, however, the Court clarified its position on such "mixed" habeas petitions. In Rhines v. Weber, 125 S. Ct. 1528 (U.S. 2005), the Supreme Court held that a district court may issue a "stay and abeyance" order which would allow a petitioner to present his unexhausted claims to the state court and then to return to federal court for review of his perfected habeas petition. Id. at 1531. However, such an order is to be made at the discretion of the particular district court and should be "available only in limited circumstances." Id. at 1535. A district court would "abuse its discretion" if it were to grant a stay to a petitioner "when his unexhausted claims are plainly meritless." Id. The unexhausted claim in this matter is meritless as discussed above in Section II, A. Even if a stay and abeyance was issued, Rhode Island state procedural law would bar the state courts from considering the claim since it was never presented on appeal. See Pike v. Guarino, 492 F.3d 61, 73 (1st Cir. 2007). Petitioner's failure to exhaust his state remedies as to this substantive claim precludes this

---

[2] In his brief to the RISC in support of post-conviction relief, Petitioner argued in support of his ineffective assistance claim that trial counsel "failed to raise [the public trial] issue during [his] appeal thereby denying [the RISC] the opportunity to decide for itself whether the trial justice's decision was made in error and what, if any, remedy justice demanded." (Document No. 4, Appendix at Tab 1, p. 7). This is effectively a concession that the substantive public trial issue is unexhausted.

Court from now considering it. See Pitchess v. Davis, 421 U.S. 482, 487 (1995); Grace v. Butterworth, 635 F.2d 1, 9 (1st Cir. 1980). Accordingly, this ground for habeas relief fails as a matter of law.

**Conclusion**

For the foregoing reasons, I recommend that the State's Motion to Dismiss (Document No. 8) be GRANTED and that the Petition for Habeas Corpus be DENIED and DISMISSED, and that the District Court enter final judgment in favor of Respondent. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
July 23, 2009