UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
MICHAEL CHALK,                 )
                               )
            Plaintiff,         )
                               )
        V.                     )   C.A. No. 09-31 S
                               )
STATE OF RHODE ISLAND,         )
                               )
            Defendant.         )
_____)
```

<u>MEMORANDUM AND ORDER</u>

WILLIAM E. SMITH, United States District Judge

Before this Court is Petitioner Michael Chalk's Objection to the Report and Recommendation of Magistrate Judge Almond, recommending that the State's Motion to Dismiss be granted and that Petitioner's Petition for Habeas Corpus be denied and dismissed. After careful consideration, Magistrate Judge Almond's Report and Recommendation ("R&R") is adopted, for the reasons stated in the R&R and those set forth below.

I.   Facts and Travel

Petitioner was convicted in Rhode Island State Court of four counts of sexual assault toward three minors: one count of first degree sexual assault, one count of first degree child molestation and two counts of second degree sexual assault. <u>State v. Chalk</u>, 816 A.2d 413, 415 (R.I. 2002) (hereinafter <u>Chalk I</u>).  During the Superior Court trial, an attorney for one of the fourteen year-old victims filed a motion pursuant to R.I. Gen. Laws § 11-37-13.2,

requesting that the victim be protected from testifying in open court, to which Petitioner objected.  See Chalk v. State, 949 A.2d 395, 397 (R.I. 2008) (hereinafter Chalk II).  The trial court overruled the objection and limited access to the courtroom during the testimony.

After his conviction, Petitioner appealed.  He did not include any claim related to the closure of the courtroom at trial as a basis for relief.  His conviction was affirmed by the Rhode Island Supreme Court in Chalk I.  816 A.2d at 424.  Petitioner then filed a Motion for Post Conviction Relief in the Rhode Island Superior Court, claiming that his trial and appellate counsel were ineffective.  See Chalk II, 949 A.2d at 397.  The Superior Court denied that Motion, and the denial was affirmed by the Rhode Island Supreme Court in Chalk II.  See Id.  Petitioner then filed the instant Petition for Habeas Corpus, claiming that: 1) the trial court improperly closed the courtroom during Petitioner's jury trial, depriving him of a public trial; and 2) Petitioner's appellate counsel failed to raise that issue on direct appeal, thereby depriving him of effective assistance of counsel.

In response, the State filed a Motion to Dismiss the Petition for Habeas Corpus.  Pursuant to 28 U.S.C. § 636(b)(1)(B), Magistrate Judge Almond recommended that the State's Motion be granted, and that the Petition be dismissed.  (See R & R, July 24, 2009.)  Petitioner then timely filed the instant objection.

II.  Standard of Review

Pursuant to Fed. R. Civ. P. 72(b)(2), as well as 28 U.S.C. § 636(b)(1), a party has ten days from the date of service to object to a Magistrate Judge's Report and Recommendation as to a dispositive motion.  Upon a party's objection, the reviewing Court makes a de novo review of the issues raised.  Fed. R. Civ. P. 72(b)(3); 28 U.S.C § 636(b)(1).

In conducting its de novo review, the Court looks to the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), which regulates the federal courts' assessment of habeas corpus petitions filed by state prisoners.  Section 2254 limits the availability of federal habeas relief to instances in which the adjudication of the claim in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Further, § 2254(b)(1)(A) requires that an applicant exhaust all of his state remedies before launching a collateral attack in federal court.  See 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that– (A) the applicant has exhausted the remedies available in the courts of the State.").

III. Discussion

A.   The Right to a Public Trial

As Magistrate Judge Almond pointed out in his R&R, Petitioner's counsel did not raise the issue of courtroom closure on direct appeal to the Rhode Island Supreme Court. (See R&R 10.) Petitioner concedes this fact in his habeas petition. (See Petition ¶ 12(a), Jan. 20, 2009.) Petitioner thus failed to exhaust his state law remedies concerning the courtroom closure claim, and it is not ripe for habeas review under AEDPA. See 28 U.S.C. § 2254(b).

In addition, under Rhode Island law, Petitioner waived the right to any further review in state court of his courtroom closure claim by failing to raise it on direct appeal. See State v. Carvalho, 450 A.2d 1102, 1104 (R.I. 1982) ("[B]ecause the issues forming the basis of defendant's postconviction-relief application were available for direct review, they are deemed to be waived."). Because he therefore cannot return to state court to exhaust the claim, it must be considered procedurally defaulted. See Pike v. Guarino, 492 F.3d 61, 73 (1st Cir. 2007) ("[A] claim is procedurally defaulted if it was not presented to the state courts and it is clear that those courts would have held the claim procedurally barred."); see also Townsend v. Comm'r, N.H. Dep't of Corrections, 23 F.3d 395, 1994 WL 168523, at *1 (1st Cir. May 5, 1994) (unpublished table opinion) ("The time for appealing the denial has expired. Therefore, petitioner is procedurally barred

4

from presenting his claims to the New Hampshire Supreme Court in order to meet the exhaustion requirement.") (internal citation omitted).

Federal habeas courts may consider procedurally defaulted attacks on state convictions only if the petitioner can "demonstrate cause for the default and actual prejudice" or "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). Plaintiff does not offer any allegations that a "fundamental miscarriage of justice" will occur if the Court does not address the courtroom closure claim. However, he does assert that his appellate counsel was ineffective in failing to raise that claim on appeal. If proven, this could serve as a "cause" for the procedural default. See Owens v. United States, 483 F.3d 48, 63 (1st Cir. 2007) (discussing the standard for "establish[ing] ineffective assistance of counsel to excuse a procedural default"); United States v. Oakes, 411 F. Supp. 2d 1, 2-3 (D. Me. 2006) ("At least one court has found that ineffective assistance of appellate counsel may constitute cause and prejudice to overcome a procedural default.").

Nevertheless, as explained below, Petitioner cannot prove that his appellate counsel was ineffective. There are therefore no grounds to excuse the procedural default, and the Court cannot review the courtroom closure claim.

B.    Ineffective Assistance of Counsel

Petitioner asserts that his counsel was ineffective for failing to include the courtroom closure claim on appeal. Therefore, although the Court cannot directly reach the merits of that claim, evaluating appellate counsel's performance requires some consideration of the substantive issues surrounding the trial court's closure of the courtroom.  As explained below, because it was reasonable for the state court to find that appellate counsel properly excluded the courtroom closure claim from Petitioner's appeal, the ineffective assistance claim must be denied.

1.    Legal standard

To prevail on his ineffective assistance of counsel claim, Plaintiff must establish that the state court unreasonably applied the "clearly established Federal Law" set forth by the Supreme Court in Strickland v. Washington to determine the adequacy of a criminal defendant's representation.  466 U.S. 668 (1984).  See Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009) (explaining that, for claims of ineffective assistance of appellate counsel, "relief may be granted only if the state-court decision unreasonably applied the more general standard for ineffective-assistance-of-counsel claims established by Strickland.")

The Supreme Court in Strickland set forth the following test:

> First, the defendant must show that counsel's performance
> was deficient.  This requires showing that counsel made
> errors so serious that counsel was not functioning as the
> "counsel" guaranteed the defendant by the Sixth

> Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687.  The Strickland inquiry thus has two prongs: a petitioner must show 1) that his counsel's performance was deficient, and 2) that the deficient performance prejudiced the defense.  Strickland, 466 U.S. at 687.  In considering the first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Knowles, 129 S. Ct. at 1420 (internal quotations and citation omitted).

In addition, for allegations regarding ineffective appellate counsel, Smith v. Robbins further elucidates the Strickland standard.  528 U.S. 259 (2000).  In that case, the Supreme Court reiterated that "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  Id. at 288 (citing Jones v. Barnes 463 U.S. 745 (1983)).  "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  Id. (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986) (emphasis added)).

7

On collateral review, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles, 129 S. Ct. at 1420 (internal quotations and citation omitted). Because the Strickland standard is a general one, state courts are granted considerable latitude to determine whether a petitioner has met that standard. Id. Thus, under "the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard," the question is whether the Rhode Island Supreme Court's decision in Chalk II was unreasonable in concluding that Petitioner was unable to meet the Strickland standard in his ineffective assistance of counsel claim. Id.

2.   The State Court's Decision

The Sixth Amendment claim that Petitioner asserts appellate counsel should have raised on appeal is based on the trial court's decision to limit public access to the courtroom during the testimony of one of the victims in the case, who was a minor. Before the child took the stand, his attorney filed a motion requesting that he "be allowed to testify by closed-circuit television or in a closed courtroom." Chalk II, 949 A.2d at 397. The trial justice reviewed a letter filed by the victim's social worker stating that it would be in the child's "developmental interest to testify under protected circumstances" and that "[o]pen

8

court testimony would retramatize [*sic*] [him] and cause him emotional suffering." (See Pet.'s Mem., Jan. 20, 2009, Ex. 1.) Petitioner's trial counsel submitted an objection to the motion, which was heard before the trial judge. The trial judge decided to partially close the courtroom, and "limited spectators during the victim's testimony to members of the media and to Chalk's directly related family members, including his father, mother, sister, and brother." Chalk II, 949 A.2d at 397. In considering Petitioner's appeal of his motion for post-conviction relief, the Rhode Island Supreme Court properly framed the issue according to the Smith standard. It compared the strength of Petitioner's unraised public trial claim with the issues that were raised on appeal - due process concerns related to delayed production of documents at trial by the State; admission of testimony concerning uncharged acts of sexual assault by Petitioner; and the failure of the trial court to grant Petitioner's motion for a new trial based on the argument that the witnesses against him did not provide credible testimony. The Rhode Island Supreme Court concluded that the purported violation of Petitioner's constitutional rights by the partial closure of the courtroom did not offer a clearly stronger basis for overturning his conviction than the issues that were presented on appeal. See Chalk II, 949 A.2d at 400.

This finding was reasonable. As for the federal law counsel conceivably could have cited in support of the foregone claim, it

is settled that a defendant's right to a public trial is not absolute. "The Sixth Amendment does not guarantee a defendant an audience. It merely guarantees that members of the public will have a right to attend a defendant's trial unless there are compelling reasons for excluding them." Fayerweather v. Moran, 749 F. Supp. 43, 45 (D.R.I. 1990). This Court has recognized that "protection of a minor's well-being is an adequate reason for restricting attendance at a criminal trial." Id. at 46. Petitioner points to the case of Santos v. Brown for the proposition that an a trial judge must justify courtroom closure with an evidentiary hearing. 596 F. Supp. 214, 218 (D.R.I. 1984). However, Santos was further clarified by Fayerweather, which stated that

> there is no prescribed format to which a trial judge must adhere in fulfilling the mandate that adequate findings be made to support a closure order. All that is required is that the trial judge: "[a]rticulated . . . findings specific enough that a reviewing court can determine whether the closure order was properly entered."

749 F. Supp. at 46 (quoting Press Enter. Co. V. Superior Court of California, 464 U.S. 501, 510 (1984)). In Fayerweather, the trial judge had questioned the child witness to determine her competency, and cited her age (six years old) and the expected nature of her testimony as justification for closing the courtroom except as to the defendant's family, the media, and other individuals the defendant designated to be present while the child testified. Id. at 44. "The only issue truly in dispute [was] whether the trial

judge made findings sufficient to warrant the restrictions he imposed." Id. at 46.   Notwithstanding the lack of an evidentiary hearing, this Court denied the defendant's habeas petition, stating that the decision that "partial closure of the courtroom was necessary to protect [the witness's] well-being" was made "after questioning the witness and obviously making judgments with respect to her maturity, understanding and reactions to testifying in a trial setting.   Those judgments are implicit in [the judge's] stated reasons."   Id.   In making the requisite case-by-case analysis, the judge "was not required to belabor the obvious by exhaustively reciting every observation and inference underlying his findings." Id.

Here, like in Fayerweather, although there was no evidentiary hearing, the trial justice made a reasonable effort to determine the impact that testifying might have on the victim, and to balance Petitioner's rights to confrontation and a fair trial.   See Chalk II, 949 A.2d at 399 (the trial justice "crafted a compromise allowing the press and [Petitioner's] immediate family members to remain in the courtroom," thus properly maintaining the openness of the courtroom, and preserving Petitioner's constitutional right to confrontation).[1]   Thus, when considered in light of applicable

---

[1] In his memorandum accompanying the appeal from Magistrate Judge Almond's R&R, Petitioner raises the contention that counsel did not even consider the issue of courtroom closure for appeal. (See Petitioner's Objection to Magistrate Judge Almond's Report and Recommendation at 9.)   However, the transcript testimony cited for

11

federal case law at the time of Petitioner's appeal, the courtroom closure issue was not clearly stronger than the issues that were presented.[2]

The same is true with regard to the state law applicable at the time of the appeal.  Recent developments in Rhode Island case law now require trial justices to conduct "hearing[s] and [make] specific findings to justify" decisions regarding courtroom closure.  State v. Barkmeyer, 949 A.2d 984, 1003 (R.I. 2008).  However, this rule only arose in 2008.  In reviewing Petitioner's ineffective assistance claim, the Rhode Island Supreme Court identified the controlling state case at the time of Petitioner's

---

that proposition reveals no more than the fact that trial counsel did not research the issue for appeal.  Id.  Such an argument cannot point to deficient performance, especially considering the strong legal presumption in favor of adequate performance, as well as the fact that Petitioner's attorney researched and briefed the issue at trial, raising not only Petitioner's right to a public trial, but other peripheral issues as well, such as the adequacy of the evidence that was put forward to establish the need for the partial closure.  (See R&R.)  In any event, because Petitioner raised this argument for the first time in objecting to the R&R, the Court need not consider it here.  See Cortes-Rivera v. Dep't of Correction & Rehabilitation of Puerto Rico, 617 F. Supp. 2d 7, 14 (D.P.R. 2009) (citing Rosario Rivera v. Puerto Rico Aqueduct & Sewers Auth., 331 F.3d 183, 193 (1st Cir. 2003)).

[2] In a supplemental brief, Petitioner cites the recent case of Presley v. Georgia, 558 U.S. ---, 2010 WL 154813(2010) as authority that the Supreme Court continues to recognize the right to a public trial.  That may be true, but it does not matter.  Again, the relevant question is whether appellate counsel selected the best arguments available given the state of the law at the time.  A 2010 case has no impact on the calculus counsel performed in 2002.  Nor does Presley announce that any part of its holding should apply retroactively on collateral review.

appeal to be _State v. Santos_, 413 A.2d 58 (R.I. 1980), which required courts to "balance[] the presumptive need for a public trial against concern for the victim's well-being." _Chalk II_, 949 A.2d at 399 (citing _State v. Santos_, 413 A.2d 58 (R.I. 1980)). _Santos_ did not direct trial justices to conduct an evidentiary hearing to weigh those considerations. Rather, it merely imposed the general obligation for trial courts "to strike an acceptable balance between the accused's right to a public trial and the need to protect the witness." _Santos_, 413 A.2d at 63. Accordingly, it was reasonable for the Rhode Island Supreme Court to reach the decision it did: "[i]n light of [state] jurisprudence at the time of the appeal from the judgment of conviction, it was reasonable for [Petitioner's] counsel to conclude that the trial justice's decision to close the courtroom was not a strong issue for appeal." _Chalk II_, 949 A.2d at 399.

As for counsel's failure to foresee the eventual change in Rhode Island jurisprudence as it relates to courtroom closure, "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight...and to evaluate the conduct from counsel's perspective _at the time_." _Strickland_, 466 U.S. at 689 (emphasis added). _See also_ _Smith v. Murray_, 477 U.S. 527, 536 (1986) (explaining that, while "[i]t will often be the case that even the most informed counsel will fail to anticipate a state appellate court's willingness to reconsider a

prior holding," an attorney's conduct should be measured according to the circumstances at the time of a particular decision).

Because Petitioner cannot surmount the "doubl[e] deferen[ce]" that applies to the state court's ruling on his ineffective assistance claim, it does not create any grounds for habeas relief. <u>Knowles</u>, 129 S. Ct. at 1420.

IV.  Conclusion

Based upon the foregoing, Petitioner's objection to Magistrate Judge Almond's Report and Recommendation is OVERRULED.  Magistrate Judge Almond's Report and Recommendation is ADOPTED, Defendant State of Rhode Island's Motion to Dismiss is GRANTED, and the Petition is DENIED AND DISMISSED.

IT IS SO ORDERED

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date: February 16, 2010

14